## MARCH TERM, 1801.

DAVID BRYAN and JOHN C. OWINGS v. CALEB WALLACE.

*In Chancery on an Appeal from a Decree of the District Court held in Lexington.*

This cause was heard at the ——— term in the year ———, in the court of appeals, and a decree pronounced at the ——— term, ———. A rehearing having been granted under the original jurisdiction of the court, and that original jurisdiction being taken away by the act establishing district courts, the cause was sent to the district court held in Lexington.

David Bryan, on the 12th day of January, in the year 1780, obtained from the commissioners for the district of Kentucky the following certificate for a pre-emption of 1,000 acres of land, to-wit:

*Bryan's Station, January* 12, 1780.

"David Bryan, by James Bryan, this day claimed a pre-emption of 1,000 acres of land, at the state price, in the district of Kentucky; lying on the branches of Elkhorn creek, about four and a half miles south-west of this place; by marking and improving the same, in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said Bryan has a right to a pre-emption of 1,000 acres of land to include the above location, and that a certificate issue accordingly."

And, having transferred one moiety of the said 1,000 acres of land to John Cockey Owings by assignment on the said certificate, the said David Bryan and John Cockey Owings, having obtained a pre-emption warrant, entered the same with the surveyor of Fayette county, on the 30th day of May, in the year 1783, in the following words, to-wit:

"David Bryan and John C. Owings enter 1,000 acres of land on a pre-emption warrant, No. 830, on a branch of Elkhorn, and about four and a half miles south-westwardly of Bryan's station."

And having surveyed the said 1,000 acres of land, in the man-

24

ner described on the connected plat, a patent issued to the said David Bryan and John Cockey Owings, bearing date the 1st day of June, in the year 1787.

John Craig, on the 28th day of November, in the year 1782, made the following entry, on treasury warrant, with the surveyor of Fayette county, to-wit:

"John Craig, assignee of Robert O'Neal, enters 500 acres of land, upon a treasury warrant, No. 507, beginning at the west corner of a 1,000 acre survey, made for the Rev. Adam Smith, upon Elkhorn; thence south 45 west to Col. John Todd's pre-emption line; thence with his line north-westwardly, and from the beginning north 45 west, so far as to include the quantity."

And on the 13th day of January, in the year 1783, made an amendment to the said entry, in the following words, to-wit:

"John Craig, assignee of Robert O'Neal, offers the following amendment to his entry of 500 acres, on a treasury warrant, No. 507: Instead of the words, 'beginning at the west corner of a 1,000 acre survey, made for the Rev. Adam Smith,' insert 'beginning 400 poles from Christian's line, in Adam Smith's line, north 45 west from said Christian's line, and supposed to be his corner; thence south 45 west to Col. John Todd's pre-emption line;' and, also, the course south 75 west to be omitted."

And having, on the 14th day of February, in the said year 1783, surveyed the same, in the manner described on the connected plat, and assigned the plat and certificate of survey to a certain William Kennedy, who assigned the same to the defendant, a patent issued to the defendant, bearing date the 18th day of March, 1784.

The annexed connected plat, No. 39, was returned in this cause, of which the following is an explanation:

1 2 3 4, Bryan and Owings' pre-emption of 1,000 acres as surveyed. D B, a spring, and the tree marked D B, claimed as David Bryan's improvement. A., Bryan's station, the course from thence to the spring and tree is south 16½ west, 1,183 poles. A to E, is south 45 west, 1,440 poles, said by the defendant to be the place called for by David Bryan's entry. From E to the spring and marked tree. is north 80 west, 697 poles. 5 6 7 8 9 10, defendant's survey of 500 acres on the entry made by John Craig.

The jury impaneled to find facts returned the following verdict, to-wit:

"We of the jury do find for the complainant:

"*First.* That John Bryan, at the request of James Bryan, marked on an elm tree the letters D B, intending the same for an improvement, for David Bryan, at a spring designated in the connected plat thus (*tree*) D B, which is the place which was claimed for the complainant, David Bryan, before the commissioners, and is the place which the said James Bryan intended for his, the said David's improvement, and for which the certificate in the bill

mentioned was granted by the commissioners to the said David Bryan.

"*Second.* That James Bryan, John Bryan and Samuel Bryan saw the said letters D B marked on the said elm tree, at the said spring, designated in the connected plat (*tree*) D B. That Morgan Bryan, Samuel Bryan, Jr., and several other persons, were, in May, 1780, informed of the place where the said David Bryan's spring, or improvement, is situated. That the said John Bryan departed this life in the year 1780, and that all the other persons above named removed to Carolina about the month of August, 1780, and did not return to the now State of Kentucky before the year 1784.

"*Third.* That neither the complainant David, nor the said James Bryan had any knowledge, prior to the granting the said certificate, that the said letters D B marked on the said elm, at the said spring, designated in the connected plat thus (*tree*) D B, had been altered or defaced in any manner whatever.

"We of the jury do find for the defendant:

"*First.* That at the time the certificate of the said David was granted by the commissioners, to-wit: the 12th day of January, 1780, he, the said David, was an infant, under the age of twenty-one years, and resided in the State of North Carolina, in the house of his father, James Bryan, and was one of the said James' family.

"*Second.* That the said David Bryan did not mark out, or choose for himself, and build any house or hut, or make other improvements on the lands, or on any part of the lands included within the lines of the survey in the bill mentioned, and claimed by him and the said plaintiff Owings; but that John Bryan, at the request of James Bryan, did mark the letters D B on an elm tree, at a spring, designated on the connected plat thus (*tree*) D B, for the said David Bryan.

"*Third.* That there was no marks or improvements of any kind, in the year 1776, made at the place designated in the connected plat thus (*tree*) D B, except the letters D B cut on an elm tree; and that between the years 1776 and 1784, the said letters D B were cut out of the said elm tree, and some other marks substituted in their place.

"*Fourth.* That the said David Bryan never was in the Kentucky county (now state of Kentucky) until after the year 1776, and did never see, nor find, the marked elm tree aforesaid, until he was shown it by his father, James Bryan, in the year 1784.

Bryan *v.* Wallace.

" *Fifth.* That after the month of August, 1780, until the year 1784, the complainant's agent found no person who could show the said marked elm tree, claimed by the complainants, under the pre-emption right in the bill mentioned; and that David Bryan, and not James Bryan, was sent for, to the State of North Carolina, to show the said marked tree, who did not look for; see, nor find the same, until shown' it by his father, James Bryan.

" *Sixth.* That the defendant Wallace had no knowledge until the year 1784 that the complainants claimed the land included in the said survey or any part thereof. And we of the jury do not know whether or not the persons through whom the defendant derived his right to the lands in controversy had any knowledge or not until the year 1784.

" *Seventh.* That at the time the said David's certificate was granted, there was no marks on said elm tree, nor improvements of any kind, at or near the same, which would lead to a supposition or belief that the complainant David had any claim thereto.

" *Eighth.* That James Bryan, the father of the said David, obtained in his own right, from the commissioners, a certificate for a settlement and pre-emption, lying in the now county of Fayette, near the head of Jessamine creek, subsequent to the certificate granted to the complainant, David Bryan.

" *Ninth.* That the complainant did not enter a caveat to prevent William Kennedy from obtaining a patent on the said 500 acres of land until more than five months after the date of the defendant's patent for the said land.

" *Tenth.* That when the said pre-emption right was obtained from the commissioners, there were several other places on the waters of Elkhorn, in the neighborhood of the said elm tree, at which letters were marked on trees, or where trees were girdled, or the beginning of cabins made, some years before that time.

" *Eleventh.* That in the month of June, in the year 1776, John Bryan, in company with James Bryan, the father of the said David Bryan, and in company with Samuel Bryan also, did, at the request of the said James Bryan, mark the letters D B on the elm tree, designated in the connected plat thus (*tree*) D B; and that before the said John Bryan só marked the said elm tree, there were no marks on the same, or improvements at, or around, near the same."·

There were only two points in the pleadings, not appearing by the facts, which are at all material:

*First.* The defendant, in his answer, alleged that the complainants in their entry with the surveyor had departed from David Bryan's entry with the commissioners, and called for other land ; and that the having done so was to be considered on the part of the said complainants as an exercise of the privilege given to them by law prior to that time of locating the pre-emption warrant on vacant land, thereby abandoning the right of pre-emption, and claiming as under a treasury warrant.

*Secondly.* That the defendant admitted that John Craig might, in part, have surveyed his entry contrary to location, but denied that it occasioned any greater interference than there would have been if it had been rightly surveyed.

The court, after the first argument at the term, delivered the following written opinion, to-wit:

" The only question which appears to the court necessary to be considered in this cause is, whether the complainants, in their location with the commissioners and in their entry with the surveyor, have used that specialty and precision which are required by law.

" *First.* As to the location with the commissioners.

" The law declares that all those who, before the first day of January, in the year 1778, had marked out or chosen for themselves any waste or unappropriated land, and built any house or hut, or made other improvements thereon, shall be entitled to the pre-emption of any quantity of land, to include such improvement, not exceeding 1,000 acres. It also declares that the commissioners shall deliver to every person to whom they shall adjudge land for settlement a certificate thereof, under their hands and attested by their clerk, mentioning the number of acres and the time of settlement, and describing, as near as may be, the particular location ; and to every such person to whom they shall adjudge the right of pre-emption to any lands, they shall in like manner deliver a certificate specifying the quantity and location of such lands, with the cause for pre-emption. The complainant's certificate states that David Bryan, by James Bryan, claimed a pre-emption of 1,000 acres of land lying on the branches of Elkhorn creek, about four and a half miles south-west of Bryan's station, by marking and improving the same in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said Bryan has a right to a pre-emption of 1,000 acres of land, to include the above location ; that is, the branches of Elkhorn creek,

about four and a half miles south-west from Bryan's station, omitting altogether the call to include the improvement, which being the foundation of the claim must be considered as an object of far greater importance than any mentioned in the certificate, and which, if notoriously known in the neighborhood and called for, would, according to former decisions, have cured the defect of certainty in the other parts of the location. Therefore, the court think that the location contained in the certificate is not as particular as it might have been.

" *Secondly.* As to the entry with the surveyor.

"Though locations with the commissioners seem not to have been required, by the legislature, to be made with any great degree of specialty; yet the law which directs entries on warrants founded on treasury rights, among which are pre-emption warrants to be entered with the surveyor, requires that the party shall direct the location thereof so-specially and precisely as that others may be enabled with certainty to locate other warrants on the adjacent residuum. This direction of the law having been almost universally unattended to, the late supreme court and this court have, in order to prevent the loss of far the greater part of those claims, relaxed the rigor of this positive injunction, and where the entries contained some direction which might guide a subsequent locator where they could be supported by any reasonable construction, have given them their aid; but an entry so totally deficient in point of description as this is, which varies from the location made with the commissioners, which has omitted the important call for the improvement, and which contains nothing that has the appearance of specialty but the course and distance from Bryan's station, both of which would have carried an inquirer to a spot far distant from that surveyed by the complainants; such an entry can not, by any reasonable construction, be supported to the injury of a subsequent locator. Had the improvement on which the complainants depend acquired such a degree of notoriety at Bryan's station, as to be known by the generality of the inhabitants to be the complainant Bryan's improvement, any small deviation in course or distance, or in both, any imperfection in the description of that which was generally known in the neighborhood, would not have affected the claim; but in the present case, when the improvement claimed by the complainants consists of nothing but two letters cut on a tree, standing in a very obscure place, and that tree known only to three persons who were present at the

marking of it, every idea of notoriety vanishes, and the court must pronounce that neither the location with the commissioners or the entry with the surveyor contain such certainty and precision as could convey any notice to a subsequent locator that the land now in contest had been appropriated by the complainants."

A rehearing was granted in this cause at the ———— term of the court of appeals, upon a certificate from two attorneys on the part of the complainants, that they believed there was error in the decree, agreeably to a rule of the said court.

And the original jurisdiction of the court of appeals being taken away by an act of the legislature before the trial on the rehearing could be had, the papers were removed to the district court held in Lexington, and a trial had in that court; in which court the following opinion was delivered at the July term of the said court, in the year 1798, by the only judge who sat, to-wit:

"I am of opinion that the errors assigned in the former decree are not well founded. The leading principle which governs that decree appears to me to be this: that neither the complainant's certificate or entry contain, on the face of them, such specialty or certainty as could have enabled the defendant to know that the land in question was that intended to be located by the complainant, but on the contrary would have led him to a place far distant. The *first* error assigned is, 'Because the commissioners have granted the complainant a certificate for an improvement, and the facts ascertain what the improvement was, how granted, and at what place; and because the confining the complainant to his course and distance, when he called to include his location, is an indirect mode of opening the decision of the court of commissioners; as they have considered and adjudged the improvement to be sufficient to entitle the complainants to their claim.' Let us examine if anything like this can be found in this decree.

"The error assigned, in the first place, does not state facts truly, and if it does, draws a wrong conclusion from them. The error says, because the confining the complainant to his course and distance when he calls to include his improvement, etc. This fact of a call 'to include his improvement' the decree, so far from admitting, expressly denies, and is one of the leading reasons for that decree; but admitting the statement of the errors to be true, I can not draw this conclusion from it, that it is an indirect mode of opening the decisions of the court of commissioners.

"What I understand by opening the decisions of the court of

commissioners is, as I have heard was the opinion given in the case of *Kenton* v. *McConnell* (which I have not had an opportunity of examining), that the commissioners had no power to allow such a claim as the complainants, either because the service expressed in the certificate is not such as entitled the complainants to a pre-emption, or for any other cause. I can not find any such idea as this held out in the decree. The power and jurisdiction of the court of commissioners has not been questioned in that decree; nor shall I undertake to do it. It is surely one thing to say the commissioners had no power to allow a claim, and another to say the complainant can not enjoy it because in his description to the commissioners he has neglected to point out with sufficient precision where he meant to locate. This neglect, being then imputable to the party only, has nothing to do with the court; I conceive the business of that court was solely to judge of the service and right to land, and in their certificate to pursue the description laid before them; but, certainly, it was the peculiar business of the appellant to dictate the description, such as the calls, marks, courses, improvements, and other specialties, etc. He did not do this, and for this reason he can not have a right of preference to a prior patentee, and not because the improvement was insufficient to entitle him to his claim. As to the second error, I can not determine how the court considered the certificate and entry, whether separately or together; the decree reads 'that neither the certificate or entry contain such certainty and precision as could convey any notice to a subsequent locator,' etc. But if the certificate does not contain the requisite certainty, the entry, which is almost a blank, can not help it sufficiently. In arguing this case, little notice was taken of the assigned errors; the merits were again discussed. The counsel for the complainant contended that the words in the certificate 'to include the above location' meant to include the improvement, but I can not coincide in this opinion, because the locating part of the certificate is comprised in the words 'lying on the branches of Elkhorn creek, about four and a half miles south-west of Bryan's station,' and the words 'by marking and improving the same' is descriptive of the service only. One designing to locate on the adjacent residuum would certainly have been led in this south-west direction to search for the improvement, to get clear of this pre-emption, and not at the letters D B in the map. It was also contended on the same side that the commissioners had no right to grant the certificate

but to include the improvement, and by the case of *Swearingem* v. *Higgins* this improvement must be in the center, and by *Pawling* v. *Merewether* that the other calls repugnant to this must give way to it. Therefore there was certainty enough, and the defendant ought to have known all this, and the tree marked D B might have been found by him. There is ingenuity in this argument, but it operates against the complainant. It shows that the defendant must have been a logician, and must have foreseen a chain of decisions before he could know how to locate the adjacent residuum with certainty, which would have been impossible, and surely not within the intention of that clause of the law pointing out the requisite certainty and specialty of entries. But it is not a question here whether the complainant has surveyed in a proper form, properly included his improvement, or whether the call for the improvement shall prevail against course, distance, or water courses. It is whether he has called for it at all, and whether, if he had, inasmuch as it is so secret and hidden, the defendant could have found it; I can think of but two sources of information which were open to the defendant to discover where the complainant's pre-emption would lie—the certificate, and the knowledge of living persons. The certificate never could have led him to D B, and the facts show that information from the other source was not to be had. In *Consilla* v. *Briscoe* the improvement was notorious to the neighborhood; in this case the improvement was not even called for, and, had it been, was so circumstanced as to elude all search and inquiry, and the only existing indication where to look for it (the certificate) was calculated to mislead; upon the authority of that case it is contended that the certificate and entry should be taken together, and, if so, that there is precision and certainty enough. I have said I am not of opinion that it would make much difference. But that case and this are not alike; there, the certificate and entry were both recorded with the surveyor before Briscoe entered. The court determined that he was bound to take notice of the certificate, and considered it as notice to Briscoe of Consilla's improvement, which was notorious. How, in this case, could an entry, not made for twelve months after the defendant's, be taken as notice to the defendant when he made his entry, or what information could he have received from it to enable him to get clear of the complainant's claim? The cases, then, are not alike. Some observations were made respecting the commissioners' books, that they were records, and records were notice, and that

the certificate being there recorded the defendant was bound to take notice of it. How far those books can be considered as affording notice, in the circumstances in which they were, it is unnecessary to determine, because, admitting they were such records as to preclude every person from saying he did not know what they contained, yet I say they could afford no notice that the complainant meant in his certificate to include his improvement, or if so, that his improvement could possibly be at D B instead of E, so that I conceive it is not enough that the record shows that there was such a claim as the complainant's, but it ought also to have enabled the defendant to find it, and then it comes up to the spirit and intention of the law—'others thereby may know how to locate the adjacent residuum.' I think it unnecessary to determine whether or not the complainant intended to relinquish his claim under the certificate or not. There appears, indeed, a violent presumption that he did. I will make one other observation. Admit that in the certificate the complainant had plainly called to include his improvement, and that the commissioners' books were unquestionably notice to the defendant of his claim. Yet it would fall far short of the case of *Consilla* v. *Briscoe;* for here, the improvement being only a single tree, unknown to any person in the country, and entirely variant in its position from the course called for, it could not have been discovered but by great accident, for, indeed, the facts show that the letters D B on the elm (the only improvement) were probably obliterated when the defendant made his entry; but in *Consilla* v. *Briscoe*, the improvement being notorious, the court determined that Briscoe was bound to take notice of it. The notoriety is certainly one of the principal grounds of that decree; and, although the decree in *Pawling* v. *Merewether* is silent respecting the notoriety of the improvement, yet I expect that, in that case as well as *Consilla* v. *Briscoe*, the improvement must have been notorious, or easily discoverable, and that in favor of such only the court have rejected other repugnant calls as surplusage. If those and other like cases have gone no farther than I have here stated, they would not authorize, in the case in question, the rejection of the south-west course and the four and a half miles; and if so, the complainant has clearly surveyed off his ground. For it seems reasonable that if you reject certain and unerring calls, which would have been a certain guide to one intending to locate in the neighborhood, the remaining one ought, at least, to be notorious, discoverable, or affording equal informa-

tion to other locators. I have not seen the case cited of *Myers* v. *Speed*. The complainants have not made out a good title; the bill, therefore, must be dismissed."

From which decree the complainants appealed.

At the two first arguments of this cause nearly the same ground was traveled over as at the first argument.

NICHOLAS and HUGHES appeared for complainants; and MURRAY and BRECKENRIDGE for defendant.

At the second argument, DAVIESS and HUGHES for complainants, and MURRAY and BRECKENRIDGE for defendant.

It was argued for the complainants:

That the commissioners having adjudged to the complainant Bryan a pre-emption of 1,000 acres of land, no inquiry could then be made into the nature of the service by which the said complainants claimed, either as to the nature of the improvement, or whether made for himself or by another for him.

That the only question open was: For what tract of land was the certificate granted? and that that question was answered by the finding of the jury, who has found as a fact that the certificate was granted for the marking the tree D B, and that the call to include the location must be considered as tantamount to a call to include his improvement. Because the marking and improving is the act the law considers as the location.

That the calls of course and distance which it appears would not lead to the improvement, ought to be rejected on the authority of the case of *Pawling* v. *Merewether*, and *Consilla* v. *Briscoe*, and that on the authority of the last mentioned case, the entry with the surveyor and the certificate ought to be taken together.

For the defendant it was admitted that the commissioners had power to grant the certificate, and that their proceedings could not then be inquired into. But it was contended that the commissioners not having expressed in their certificate that the pre-emption was to be laid off to include the improvement, the cases of *Pawling* v. *Merewether*, and *Consilla* v. *Briscoe*, did not apply; for in those cases impossible and repugnant calls were rejected in favor of a certain call; whereas in this case if you reject the course and distance you leave no call in the entries, for the call to include the above location must be construed to mean to include the land about four and a half miles south-west of Bryan's station.

It was also contended that the case of *Consilla* v. *Briscoe*, as to taking the certificate and entry together, did not apply, because

Consilla's was a settlement and pre-emption, and his certificate was recorded with the surveyor, which must be the case wherever an entry is made on the certificate, but in this case the entry was made on the pre-emption warrant, and the certificate was not recorded with the surveyor.

And now at this term the cause came on to be argued again, on the appeal from the decree of the Lexington district court.

DAVIESS for the appellants.—The decree is erroneous. By the fact found for the appellants, it is ascertained that the certificate was granted to David Bryan for the marking the tree with the letters D B. David Bryan did not make this improvement, but I shall take it as a postulatum, that the commissioners having granted a certificate, is conclusive evidence of the parties' right, to whom the grant is made, to the thing granted. It can be no objection that the improvement could not be discovered by others. It is the case with most such improvements; nor can the right of the pre-emptioner be affected by the want of notoriety of his improvement. The right of a pre-emption to 1,000 acres has been granted to include the tree marked D B. And such a description has been given of the place as the party could be supposed to give in 1780.

Can that grant be vacated, although the holder of the certificate can show the tree, because a subsequent locator could not find it?

The district court certainly erred in saying the call in the certificate to include the location is not a call for the improvement, when the act of marking and improving not only entitled the pre-emptioner to his claim, but also gave it the location. The calls of course and distance must be rejected, as in *Kenton* v. *McConnell*.

Admit the doctrine of notoriety, which has been contended for on the other side, and suppose David Bryan had an improvement notorious to the neighborhood, and that he had in the description called for objects more distant than this course and distance, certainly those objects would in such a case be rejected.

It is found by the jury that this improvement was known to six men, and was therefore more notorious than the name of Heaton's creek, called for by Oldham's entry in 1780, which had only had that name from two or three men, and was generally known by the name of Pottinger's creek a year before the entry was made, and ever since. *Carter* v. *Oldham, ante,* p. 345.

There is no departure from the certificate in the entry with the surveyor, but barely an omission of the call for the improvement,

for the call in the entry of south-westwardly is by former rules of construction the same as south-west.

Let us inquire what a subsequent locator would have done, in order to find the situation of this pre-emption? He would not have rested satisfied with running the course and distance; he would have known the claim was bottomed upon an improvement, and he would have hunted for it.

HUGHES, on the same side.—It will be material in the argument of this cause to examine and contrast the nature of the rights under which the complainants and the defendants claim.

During the regal government, and notwithstanding a proclamation forbidding the settling on vacant lands, settlers had spread themselves over the country on the western waters.

In June, 1776, it was resolved by the convention of Virginia, that such settlers should be entitled to tracts of land not exceeding 400 acres, and by an act of the assembly of Virginia, of the October session, in the year 1777 (Chan. Rev. p. 60, sec. 5), the said resolution was recited, and the same provision made.

In May, 1779, the legislature thought it necessary to ascertain and provide for the claims of settlers, and to provide also for the sale of the lands, which should be left waste and unappropriated, after having satisfied the claims of the settlers. For this purpose two acts were passed. The one entitled "An act to adjust and settle the titles of claimers to unpatented lands, under the present and former government, previous to the establishment of the commonwealth's land office," and the other entitled "An act for establishing the commonwealth's land office, and ascertaining the terms and manner of granting waste and unappropriated lands." Something of the intention of the legislature may be discovered even from the titles of those acts, the first to adjust and settle by confirmation or rejection, by grant or denial; the other to settle the terms of granting waste and unappropriated lands, or, in other words, lands to which there were no legal or just claims. Certainly no lands could be considered as liable to appropriation under the second law, to which the commonwealth's agents, the commissioners, should adjudge a right under the first. The intention is still farther manifested by the preamble of the fourth section of the first act. Chan. Rev. 91.

"And whereas great numbers of people have settled in the country, upon the western waters, upon waste and unappropriated lands, for which they have been hitherto prevented from suing out

patents, or obtaining legal titles by the king of Great Britain's proclamation, or instructions to his governors, or by the late change of government, and the present war having delayed until now, the opening of the land office, and the establishment of any certain terms for granting lands, and it is just that those settling under such circumstances, should have some reasonable allowance for the charge and risk they have incurred, and that the property *so acquired* should be secured to them."

This contains an acknowledgment on the part of the legislature that the settlers had a claim to land in consequence of the service they had performed, and the enacting clauses provide what quantity of land the different classes of settlers shall be entitled to demand, and how they may acquire legal titles to it.

In making provision for the adventurers on the western waters, prior to the passage of the law, we find the legislature proportion that which they evidently have considered as a remuneration for past services to the nature of the services.

To the actual settler they gave 400 acres, to which no other person hath any legal title or claim.

To the adventurer, who for his greater safety settled in a village or township, 400 acres, to be located on land to which no other person should by the said act have the right of pre-emption, and to each of the above description the right of pre-emption to 1,000 acres, or a smaller quantity adjoining, at their election.

To the actual settler after the first day of January, in the year 1778, the pre-emption of 400 acres, to which no other person hath a just or legal right or claim to include his settlement, and to all those who before the said first day of January, 1778, had marked out or chosen for themselves any waste or unappropriated lands, and built any house or hut, or made other improvements thereon, the pre-emption of any quantity to include such improvements, not exceeding 1,000 acres, and to which no other person hath any legal right or claim; and to this clause is annexed the following proviso, to-wit: provided they respectively demand and prove their right to such pre-emption before the commissioners to be appointed by this act, within eight months pay the consideration, produce the auditor's certificate for the treasurer's receipt for the same, take out their warrants from the register of the land office within ten months, and enter the same with the surveyor of the county within twelve months next after the end of this present session of assembly, and thereafter duly comply with the rules and regulations of the land office.

The time both for the sitting of the commissioners, for taking out warrants, and for entering them, was prolonged.

But with that we have nothing to do in this cause, because the imperfection of this claim is said to be the want of certainty in the entries of the pre-emption with the commissioners and the surveyor.

The clause of the second act, under which the defendant's claim has arisen, is as follows:

" And for creating a sinking fund in aid of the annual taxes to discharge the public debt. *Be it enacted*, That any person may acquire title to so much waste and unappropriated land as he or she shall desire to purchase on paying,". etc.

Three new ideas are started in the court's decision in this cause, all of which are hostile to settlement and pre-emption claims, and in my opinion not warranted by the land law.

*First.* That a claim to a pre-emption of 1,000 acres of land may be lost for want of precision in the description of the location contained in the certificate, although the improvement for which the certificate was granted is identified.

*Second.* That the location contained in a certificate for a preemption of 1,000 acres for marking and improving, may be of other land than that around the improvement.

*Third.* That the locations of pre-emption claims are either good or bad, as they might operate as a notice to subsequent locators on treasury warrants.

If my idea is correct as to the first point, a forfeiture would be occasioned to the party for the not doing that, which he was not by law bound or enjoined to do, to-wit: specially describe the location.

The law has provided that the improvement shall be included within the survey. But it has not provided in what manner it shall be included, or what shape the survey shall assume.

It is made the duty of the party to demand and prove his right before the commissioners; and the duty of all persons concerned, claimant, commissioners and clerk, are thus enjoined by the law.

*First.* That of the claimant.

" And the persons to whom any right of pre-emption on account of settlement or improvement shall be adjudged, shall fix the quantity at their own option, at the time of the judgment, so as not to exceed the number of acres respectively allowed by this act, or to interfere with the just rights of others." Chan. Rev. 93.

*Secondly.* That of the commissioners.

" The said commissioners shall deliver to every person to whom they shall adjudge lands for settlement, a certificate thereof, under their hands and attested by the clerk, mentioning the number of acres and the time of settlement, and describing as near as may be the particular location, noting also therein the quantity of adjacent land to which such person shall have the right of pre-emption, and to every other person to whom they shall adjudge the right of pre-emption to any lands; they shall in like manner deliver a certificate, specifying the quantity and location of such land, with the cause for pre-emption." Chan. Rev. 93.

*Thirdly.* That of the clerk.

" The clerk shall keep exact minutes of all the proceedings of the commissioners, and enter the names of all persons to whom either lands for settlement or the right of pre-emption, as the case is, shall be adjudged, with their respective quantity and location," etc. Chan. Rev. 93.

The difference of the provision in this law from that respecting the entry with the surveyor, which certainly applies only to such claims as commence with the purchase of the warrant, and have no locality until an entry is made with the surveyor, is worthy of remark.

The words of that law are: The party shall direct the location thereof so specially and precisely as that others may be enabled with certainty to locate other warrants on the adjacent residuum. Chan. Rev. 95.

And the reason of this difference is apparent; the very question submitted to the commissioners was that which the district court has taken into consideration. Has Bryan a right to a pre-emption of 1,000 acres of land including the tree marked D B? This the commissioners have adjudged. What other description then was necessary, but such as would be sufficient to describe the thing intended in any other grant or deed?

But the inception of a treasury warrant claim is the purchase of the warrant, and that when purchased is no appropriation of any particular spot, but only confers the right to appropriate; and in making that appropriation the clause last recited is the rule; and there are two reasons which may be assigned why no such rule was made for the location of settlement and pre-emption, and pre-emption claims.

25

The law itself having provided that the commissioners should grant pre-emptions to include the improvement for marking and improving. It was considered that as soon as the commissioners granted their certificate, their grant was in itself a location, being founded on proof of building or marking, etc., on the ground. And because the terms of sale to the purchasers of treasury warrants was, that they should locate on waste and unappropriated lands, and the law operated as a notice to them that the commissioners were to determine what land was subject to the claims of settlers, and pre-emptioners, and that what lands were by them adjudged could not be liable to entry by virtue of treasury warrants, and they were by the terms of their purchase bound to take upon themselves the risk of avoiding such claims, with no other guide than the commissioners' certificate.

It never could have been the intention that the clause I have referred to, from Chan. Rev. 95, should govern the entry of pre-emption warrants, or rather that if the pre-emption entry only followed the words of the certificate without other specialty of description, that the right of pre-emption should be lost.

It has ever been considered that if a pre-emption warrant was obtained at any time before the last day for obtaining warrants, which I believe was in December, 1787, and entered before the month of June, 1788, that that part of the law was as completely complied with, which directs an entry to be made with the surveyor, as if the warrant had been obtained, and the entry made in the year 1780.

And it will also be conceded, that if land in such late entry would be included, not called for by the express words, or which would be included by the usual construction of the certificate, that the entry would, so far as to intermediate claims, lose the force of pre-emption. But if made so as to include no other lands than that called for by the certificate, it would be good and have precedence, not under the entry but under the certificate. From whence it follows, that the description contained in the certificate is the true criterion by which to ascertain what land belongs to the pre-emptioner, and is the evidence of his title to a pre-emption, which acquires no additional validity by a subsequent entry, or can be changed by it, although the claim is liable to lapse, or forfeiture, if it is not made.

The certificates granted by the commissioners for pre-emptions of 1,000 acres, for marking, etc., are generally all worded alike,

except as to the conclusion, some are " to include the said, or his improvement," but by far the greater part like this, " to include the above location," and in nineteen cases out of twenty, the call for improvement or location, which I consider as the same, is the only call by which the spot could be identified.    For this reason it certainly was, that the court gave the construction they have to the certificates, considering the improvement as the foundation of the claim.

The power of the commissioners to grant to Bryan is not now in question.

It has been often admitted, and now considered as a settled point, that they had competent power to determine the party's right, and that the only question open was, what land was adjudged to the claimant.    How then, when that question is settled, as it is here by the fact found by the proper tribunal, the jury, can it be doubted ?

This brings me to the next point.

If it is admitted that the commissioners had power to adjudge 1,000 acres of land to David Bryan ; the first question which arises is, have they done it, and the next, where is the land so adjudged to him ?

The first question is answered by the commissioners' certificate, in which they say that, " satisfactory proof being made to them, they are of opinion that the said Bryan is entitled to the pre-emption of 1,000 acres of land," etc., and the second by the insertion in the said certificate, as required by law, of the cause of pre-emption, to-wit : " by marking and improving the same in year 1776." The certificate is not granted for land which is to be found by going any particular course from Bryan's station, but for the land marked and improved in the year 1776.

It would be absurd to suppose, if the commissioners had power to grant one tract of land and not another, that they have omitted to grant that which was claimed by or for the party, and which they have power to grant ; and that they have granted that which was not claimed, and over which they had no power.

But such a supposition would not only be absurd, but is in this case positively forbid ; for the commissioners say they granted the land for marking and improving the *same*, and the facts show where the marking and improving was made ; besides this, they could grant no other land.    The court, therefore, in saying the call for the above location is a call for the land lying about

four and a half miles south-west of Bryan's station, on the branches of Elkhorn, have virtually said, that the commissioners have adjudged a right to other land than they themselves declare they have, and this because there is no call for the improvement, which is in no part of the law directed to be inserted in the certificate, and whether inserted or not, is by operation of law the *location*.

There have been two opinions entertained in Virginia respecting the time from which these kinds of claims should take date. In the case of *Maize* v. *Hamilton*, and *Burnsides* v. *Reed*, reported by the chancellor of Virginia, Mr. Wythe, it appears to have been his opinion, that these claims when confirmed have relation as to date to the time of performing the service, that is, the time of making the improvement. And that it was the opinion of the court of appeals, that they took date only from the time of the confirmation, which was in the spring of 1779, the time of the passage of the act, entitled " An act for adjusting and settling the titles of claimers to unpatented lands, under the present and former government, previous to the establishment of the commonwealth's land office."

In a contest between a pre-emptioner and a claimant under a treasury warrant, it is of no consequence which of those opinions are taken. The claim, after the certificate is granted, is either valid and has relation to the confirmation of the claims of settlers by the act of 1779, or it is bad.

The third point which the decree in this cause would establish, would tend to destroy all settlement and pre-emption claims, and is unjust in the highest degree, inasmuch as it gives a retrospective operation to the land law.

I have attempted to show in the former part of my argument that it was not made the duty of the party obtaining a certificate, specially to describe the location of his settlement and pre-emption, or pre-emption ; but that it was the duty of the commissioners to do it; but at all events whether it was the duty of the party, or of the commissioners, no law enjoined that the entry with them should be made so specially and precisely, that subsequent adventurers might be enabled to appropriate the adjacent residuum.

The commissioners, we find from their records, have been content with a general description of the part of the country, and the call to include the improvement; and we know as certainly, that the court have considered the call to include the improvement without any other as sufficient, and have laid down a rule for surveying such claims.

What then is to destroy this claim?

The want of notoriety of the improvement, in consequence of which the entry with the commissioners contained no notice to the defendant where this claim lay.

Surely so absurd a doctrine as this was never before broached. If the commissioners granted a certificate for an improvement not notorious, yet it is admitted their grant is valid. Yet, if after the destroying hand of time has leveled at once the improvement and the improvers in the dust, this improvement which wanted notoriety at the time it was proved to have been made, and at the time it was considered as a good foundation to support a claim, shall be found destitute of notoriety, it shall yield to an inferior claim, although the situation of the improvement can be shown.

Notice to treasury warrant claimants of the location of pre-emption claims, was never intended to be given. The purchaser purchased subject to the risk of interfering, and in many cases with pre-emptions for which no certificates were actually granted at the time he located.

Although the time of the sitting of the commissioners was only prolonged two months in Kentucky, their sitting was continued in the other districts to May, 1782.

In May, 1780, the purchaser of a treasury warrant may have made his entry, including an improvement, by virtue of which no pre-emptioner had then either laid in a claim or obtained a certificate.

And yet it will be admitted that if this happened in any other district than Kentucky, the claim of the pre-emptioner allowed and certified by the commissioners, the last day of their sitting in 1782, would be equally as valid as if granted in 1779, and would, equally as to date and dignity, relate back to the confirmation of such claims by the act for adjusting and settling, etc., and would of course be superior to the treasury warrant claim. So officers and soldiers of the Virginia line on continental establishment were, by an act of the October session, 1779, authorized to lay in their claims before a county court, at any time before the expiration of one year after they were discharged from the service. The war ended in 1783; a certificate therefore granted in 1784 would entitle the holder to the land improved, even against locators, who entered before the certificate was granted. I have always considered the case of *Myers* v. *Speed*, and this case, as exceptions to the generally uniform tenor of the decisions of the court, and as

attempts at the time the conclusiveness of the commissioners' certificate is admitted to destroy the effects of them by a side wind.

The constitution has provided that disputed questions of fact should be inquired into and found by a jury, and in pursuance of this provision, in both cases juries were summoned, and in both cases did the jury find that the certificate was granted for a particular spot, and in the first case the court say they will not presume an improvement made by another, and only as notorious as the generality of improvements were, is the one described in the certificate, because it is not found how notorious the other improvements were, and because the law certainly contemplated personal services; although the jury expressly swear it is so.

Here the court undertake to inquire whether it is such an improvement as the commissioners could have granted a certificate for, although the constitutional tribunal has found the fact, they therefore either doubt the fact found to be true, or they doubt the power of the commissioners to grant such a certificate for such a service. The first they are forbid to do by the constitution; and the second they acknowledge in their other decisions they ought not to do. See *Consilla* v. *Briscoe*, and *Kenton* v. *McConnell.*

But observe farther. The court say, Speed is off his ground, and yet notoriety is required to give him notice not to appropriate land he could not locate, for he or those under whom he claims as well as the complainant, could enter no where with the commissioners, but to include the improvement, so that Myers, after having purchased a certificate for a pre-emption of 1,000 acres, which had been granted to Davis, and being able by proof to identify the land for which the certificate was granted, has his bill dismissed, because the improvement on which his claim was founded was not notorious enough to keep off Speed, or rather Bledsoe, under whom he claimed, who by law, if the land had never been appropriated, could not have entered there.

Craig in this case entered before Bryan's entry with the surveyor was made, and it is contended Bryan has in his entry with the surveyor departed from the certificate. This is not the fact, for he has substantially the same calls, although he has omitted that for the improvement. But Bryan had or had not a claim under his certificate. If he had he might have entered his pre-emption warrant until 1788; he has entered it after the date of Craig's entry. His claim was good when Craig entered the land, and he has since by his entry shown no intention of abandoning it.

BRECKENRIDGE for the appellee.—I will first examine this cause as it stands on the errors assigned. The first I do not understand. It is a statement of premises without a conclusion. I will therefore proceed to the second.

A certificate granted by the commissioners is, I admit, a record, and of a record there are two prominent features.

The *first* is, That it is notice.

The *second*, That it can not be contradicted. See *Consilla* v. *Briscoe*.

It can not be altered; you can not change it by amendment, so as to fit it to the place intended.

The fact in this case says, D B is the place intended, but if the certificate does not fit it, by legal construction the fact is of no avail, for the intention of the locator is not to be taken. In the case of *Consilla* v. *Briscoe*, it was determined that you should not be permitted to amend or explain an entry, and yet in this case the appellants are contending for a fact which contradicts the record.

They are establishing as a fact a thing not called for, an improvement made by James Bryan, at the request of John. Course and distance is given by the call of the certificate to lead to the appellant's improvement, and the course given varies from the course from Bryan's station to the tree marked D B 18 degrees, and the distance is short of it 257 poles. I contend that the certificate does not include the land claimed by the appellants, and that the location contained in a certificate for a pre-emption of 1,000 acres of land, ought to be as special as that contained in a certificate for a settlement and pre-emption, as to the description of the settlement.

The certificate calls for the branches of Elkhorn; they are numerous; four and a half miles south-west of Bryan's station; there might be some certainty in this; and there is a call for marking and improving in the year 1776, but we negative the fact that David Bryan marked and improved in the year 1776.

The entry with the surveyor is a departure from the certificate, and can only have the force of a treasury warrant.

It calls for a branch instead of the branches, and south-westwardly, which is not as certain as south-west.

I would ask under what rules of decision can you detach his entry, and fix it on the improvement. If they can cover D B, can they not cover two places with the same claim? An entry is an occupancy upon paper of one place in exclusion of any other place.

If this certificate will not fit the place, the entry will·not. Let it be conceded that D B is the improvement, and that the call in the certificate to include the location is tantamount to a call for the improvement, and let the repugnant calls be rejected, it will then read to lie on the branches of Elkhorn to include his improvement, and this would not be good, unless the improvement was notorious: and the facts found negative the idea of notoriety.

The appellants depend upon the second fact, but the other facts show that the improvement was not shown to the parties themselves.

The certificate and entry as records ought to have given notice of it.

There were but two sources of information open, as the judge of the district court says, to subsequent adventurers.

The entries and the evidence of the parties concerned in improving. From neither of these sources could any information have been got by the appellee. What justice or equity then can there be in setting up this claim against a legal title, not said to be irregularly obtained?

The statement of the court of appeals must have been misconceived in assigning the second error. There is nothing in it that goes to impugn the decisions of the commissioners.

The court in refusing to admit that the certificate calls for the place D B, destroy it, but it is because the act of the party, the location, is defective, and not because the commissioners had no right to grant such certificate.

If declaring a certificate to be void is entrenching on the power of the commissioners, it is often done. It was done respecting Julius Sanders' certificate, and in the cases of *Litton* v. *Berry, Young* v. *McGee,* and *Myers* v. *Speed.* Suppose instead of four and a half miles, Bryan had called for fourteen and a half miles, and this same fact had been found, would you have admitted it? If you would, there is no such thing as a void entry. Your regard has been to subsequent locators that they might occupy the adjacent residuum, and considering the location as the act of the party, you will not suffer him to prevail· against a special claim, unless he makes his location according to law.

The third error goes upon a mistake in point of law.

It never was determined that the certificate for a pre-emption of 1,000 acres and the entry with the surveyor should be taken together. In *Consilla* v. *Briscoe,* the reason given is that the certificate was

recorded with the surveyor, which does not hold here. Besides Consilla was confined to a spot, and Bryan had a right to abandon the dignity of his claim as a pre-emption, and locate it elsewhere as a treasury warrant.

But take the two entries together, and they do not make a good claim. I will now pursue the gentlemen.

Mr. Daviess says the certificate proves that Bryan was entitled; true, but to what? this is the point of contest; his certificate is legal, but was not granted for this land.

He also says the certificate is a grant, and a grant of the land at D B; to this I answer, that it is no more a grant as to subsequent locators, than an entry on a treasury warrant is against subsequent treasury warrants.

It can not have superior dignity, because he might change his ground. But Mr. Daviess is right in saying that if Bryan can show his ground he shall have it, but he can only show it by the paper and the legal construction of it. The legislature meant to settle and quiet the various and vague claims, and never intended you should be allowed to show by evidence, a place not agreeing with the record of your claim. Mr. Daviess speaks of the difficulty of describing land in 1780. Is this described as nearly as may be? I pray you to look on the plat; there is a spring and two military surveys, he might have called for them; he might have described it as in the vicinity of Lexington, as it is. But he has chosen course and distance, and had he surveyed the land so described, he could not have been moved.

He would thus have argued, you can not move me to the tree D B, it is not my mark, I have not called for it. Mr. Daviess says the commissioners could grant no other place but that which was improved; granted, but the party must show the improvement within his grant, and here he has failed to do so, and as is said in *Myers* v. *Speed*, he must for that reason fail. Mr. Daviess cites *Kenton* v. *McConnell*, to prove you may reject calls, but that case, *Pawling* v. *Merewether*, and *Consilla* v. *Briscoe*, prove that calls are only to be rejected in favor of some certain calls, as Consilla's improvement and Cowen's cabin. He says the court can not move Bryan from his improvement; I am satisfied that this is the case, but neither can you put him on his improvement, if his location is contrary to it, for by such location he is bound as his last choice. *McClanahan* v. *Litton*. And the court can not add to his entry. Besides he could only cover this land by the constructive implication that location is synonymous to improvement.

About four and a half miles, Mr. Daviess says, is only general description; I ask him to show me the particular description? You are to make out the particular description by construction, and then make the general description give way to it.

The case of *Carter* v. *Oldham* does not apply, because there the place called for by Oldham might have been discovered by reasonable inquiry.

I come now to the argument of Mr. Hughes. He says that it is determined by the former decree in this cause, that a pre-emption may be lost although you prove the improvement, by want of precision in the description. Certainly it may if falsely described. You can never get over that part of the law which says a man shall so locate his claim, that another may take up the adjacent residuum.

The tenth fact shows there were other improvements.

Therefore, although it must have been proved to the commissioners that there was an improvement, it is uncertain where it is, and can only be found by the course and distance.

Mr. Hughes states that it was the duty of the commissioners to note the location, but surely it must be the act of the party. It was their duty to enter it as the party directed. Did a surveyor ever refuse to make an entry because he did not like the location?

Mr. Hughes has started a new idea that the same precision is not required on the entry of a pre-emption of 1,000 acres with the commissioners, as in the entry of a certificate for settlement. Surely you can not intend a difference was intended from the copulative "and."

Less certainty could not be admitted in the entry of a pre-emption, where only the *animus residenti* was displayed than in the case of an actual residence. But this argument recoils on the party, for if the party was not bound to describe his land in the certificate; he is bound to enter his warrant with the surveyor, and all entries on warrants must be made alike. Chan. Rev. 95.

I care not whether the certificate relates back to the time of making the improvement, or to 1779, but it must relate back to something, not a vague entry.

It is certainly true that if a man enters a pre-emption warrant in 1783, which is the same as his certificate, and his certificate is special; it is better than an entry made in 1782 on a treasury warrant for the same land, and relates back to 1779. But the law intended certificates should be special. See Chan. Rev. 206, sec. 1.

Bryan v. Wallace.

It is true there are some such cases of hardship as Mr. Hughes has stated, where a treasury warrant claimant may be ousted by a better entry on pre-emption, in consequence of the relation back to 1779.

This the court can not guard against, but they may guard against an interference with the land already described, and here the appellee had nothing to guide him, but the four and a half miles south-west, of which he has kept clear.

The cases of *Pawling* v. *Merewether*, *Consilla* v. *Briscoe*, *Bryan* v. *Bradford*, *Myers* v. *Speed*, *McClanahan* v. *Berry*, and *McClanahan* v. *Litton*, have all been determined upon the principle of notoriety, which has never been dispensed with.

BY THE COURT.—This cause was first decided by the court of appeals, when it had original jurisdiction, and the decree then pronounced was not subject to revision farther than it had been opened for a rehearing on the supposed errors, which were certified conformable to a then existing rule of that court. Therefore when by a subsequent law, a rehearing was had in the district court, on the decree from which this appeal was taken, that court did not or ought not to have gone into a decision of the cause, farther than it was authorized by the errors thus assigned, and for the same reason, the court of appeals in now deciding on this appeal, is bound strictly to confine itself to those errors. To do which it is necessary to premise that the claim of the complainants in the original suit, now the appellant's, is founded on the following certificate from the commissioners, and entry with the surveyor :

" *Bryan's station, January* 12, 1780.

" David Bryan by James Bryan, this day claimed a pre-emption of 1,000 acres of land at the state price in Kentucky, lying on the branches of Elkhorn creek, about four and a half miles south-west of this place, by marking and improving the same in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said David Bryan has a right to a pre-emption of 1,000 acres of land, to include the above location, and that a certificate issue accordingly."

" *Fayette county, Surveyor's office, May* 30, 1783.

" David Bryan and John C. Owings enter 1,000 acres of land on a pre-emption warrant, No. 830, on a branch of Elkhorn, and about four and a half miles south-westwardly of Bryan's station."

From the reasons assigned for opening the decree under consideration, the court is not able to determine whether three distinct errors were intended to be assigned, or two only. But as it can injure neither of the parties, they may be taken as three.

The first error is: "Because the commissioners have granted the complainants a certificate for an improvement, and the facts ascertain what the improvement was, how granted, and at what place." This, if strictly taken, is certainly immaterial, it being nothing more than a simple proposition without an inference. But if the court were to supply the inference, which it is presumed was intended, that therefore the claim of the complainants ought to have been sustained. It can not be justified by the land law. It is true that the facts found by the jury do ascertain the place where the letters D B were cut on the elm tree, which was intended for an improvement for the appellant David, and for which the certificate for the pre-emption was obtained from the commissioners; but the land law requiring what is not done in the present case, that in the certificate the particular location of the land should be described as near as may be, we think the question so important that it can not be dispensed with.

The surveyor's report ascertains that the only particular calls in the location, about four and a half miles a south-west course from Bryan's station, do not lead to this improvement but to a place at the distance of more than two miles from it. And as to the improvement, admitting it to be called for in the location, the facts found by the jury ascertain that the marking intended for an improvement for the appellant David, was only the letters D B cut on the elm tree.

The facts found by the jury in this cause inform us that until long after the appellee's entry was made and surveyed (the legality of neither of which is denied in the errors assigned), only three persons had ever seen this improvement, and that a few others, in May, 1780, were informed of its situation, who all removed from the now State of Kentucky, about the month of August, 1780, and that none of them returned to it before 1784.

That during this long space of time the appellants' agent could find no person who could show the improvement. That David Bryan was sent for, to the State of North Carolina, to show the marked tree. That before the year 1784 the letters D B were cut out of the elm tree, and some other marks substituted in their place; and that when the pre-emption right was ascertained by

the commissioners, there were several other places on the waters of Elkhorn, in the neighborhood of this elm tree, where letters were marked on trees, or where trees were girdled, or the beginning of cabins made some years before that time. These matters of fact clearly evince that the location with the commissioners was so far from a compliance with the requisitions of the land law that, on the contrary, the calls therein for course and distance were calculated to deceive every subsequent locator, and that the improvement, admitting it to be called for, had no reasonable degree of notoriety, nor even any mark of distinction by which it could have been known to be claimed by the appellant, David Bryan, if it had accidentally been discovered. But, to accord with a leading principle of the land law, the certificate ought not only to have shown that the claim had been sustained by the commissioners, but should likewise have contained such a description of the situation that subsequent locators, on reasonable inquiry, might have found it.

The second error assigned can not justly be imputed to the former decree of this court. It is as follows: Because confining the complainant to his course and distance, when he calls to include his location, is an indirect mode of opening the decision of the court of commissioners, as they have *considered and adjudged* the improvement to be sufficient to entitle the complainant to his claim, this court only adjudged that the location contained in the certificate granted by the commissioners was essentially defective, which, it was then and is now conceived, must have been devised by the claimant, or his agent, and which the commissioners had neither skill to direct nor power to control. Its validity, therefore, depends on the clause of the land law before alluded to, and not the decision of the commissioners, which this court has formerly adjudged it had no power to annul in favor of claims which originated subsequent to those decisions, and has never since entertained any design of contravening that adjudication. But surely the construing of a location properly, or improperly, is very different from opening the decisions of the commissioners.

The third error assigned is, because the entry with the surveyor, and with the commissioners, according to a former decree of the court, and to law, ought to be taken together.

This is certainly founded on a mistake both of fact and of law. The late supreme court, in the suit *Consilla* v. *Briscoe*, adjudged that, because a settlement right could not be removed from its

original location, and the certificate for which being recorded in the surveyor's office where the entry thereon was made, they ought to be taken together, or be allowed to explain each other. And another reason with great propriety might have been added, that the land law did not point out in what manner such an entry should be made; and the court of appeals, in the last decree in the suit *Kenton* v. *McConnell, etc.*, a similar case, has recognized that adjudication.

But, in the case of a pre-emption right granted for an improvement, it is believed that no such opinion has ever been given, and if there had, it could not have been supported by law or equity, the case being evidently different from that of settlement rights. The certificate for pre-emptions founded on improvements were not required to be recorded with the surveyor, but entries on pre-emption warrants, as well as all other kinds of land warrants, were required to be directed so specially and precisely that others might be enabled with certainty to locate other warrants on the adjacent residuum, which must imply that the pre-emptioners would be bound by their entries; and the entry under consideration being made subsequent to the passage of the act, in 1782, permitting the pre-emption warrants to be located on any vacant lands, it would be highly absurd that the location with the commissioners and the entry with the surveyor should be taken together, when the claimant himself might have made and intended a discordance between them. Therefore, in all such cases, it can only be proper to recur to the location with the commissioners, and compare it with the entry with the surveyor, for the purpose of discovering the dignity of the claim. In every other point of view the entry must depend upon its own specialty and precision.

On a review of this case, so far as the errors which have been assigned extend, it is evident that if the expressions in the appellants' location with the commissioners, " to include the above location," is synonymous with the expression to include the improvement, then the entry with the surveyor is materially variant from the location with the commissioners; and the entry with the surveyor being the last act of the appellants, of which they might have taken the advantage, reason as well as law pronounces that they ought to be bound by it; and, being bound, had they made their survey conformable thereto, it would not have interfered with the claim of the appellee, or any part thereof.

Wherefore, it is decreed and ordered, that the former decree of this court, and of the said district court dismissing the appellants' bill, be affirmed, and that they pay unto the appellee his costs about this appeal expended.